ACCEPTED
01-13-01034-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/10/2015 4:08:53 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-13-01034-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/10/2015 4:08:53 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIRST JUDICIAL DISTRICT OF TEXAS AT HOUSTON

## SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR, *ET AL.*, *Appellants*,

## V.

## LEAH ANNE GONSKI, M.D. AND JAOU-CHEN HUANG, M.D., *Appellees*.

**On Appeal from the 164th Judicial District Court of Harris County, Texas Trial Court Cause No. 2012-35806A**

## JAOU-CHEN HUANG, M.D.'S RESPONSE IN OPPOSITION TO APPELLANTS' MOTION FOR REHEARING

Charles B. Holm
State Bar No. 09900300
cholm@holmbambace.com
Kyle M. Smith
State Bar No. 24054226
ksmith@holmbambace.com
Holm Bambace LLP
1010 Lamar, Suite 1100
Houston, Texas 77002
(713) 652-9700 – Telephone
(713) 652-9702 – Facsimile

**ATTORNEYS FOR APPELLEE, JAOU-CHEN HUANG, M.D.**

TO THE HONORABLE FIRST COURT OF APPEALS:

Comes now, Appellee, JAOU-CHEN HUANG, M.D. ("Dr. Huang"), and files this Response in Opposition to Appellants, SHIRLEY LENOIR, Individually and as Personal Representative of the ESTATE OF SHANA LENOIR and CHRISTOPHER MCKNIGHT, Individually and as Next Friend of NAYLA MCKNIGHT's ("Appellants") Motion for Rehearing regarding the portion of this Court's Opinion, issued on November 25, 2014, affirming the trial court's dismissal of Dr. Huang pursuant to Texas Civil Practice & Remedies Code § 101.106(f). For the reasons set forth below, Appellants' Motion should be denied.

## I.

## DR. HUANG SUBMITTED COMPETENT EVIDENCE

In their Motion, Appellants argue that certain evidence Dr. Huang submitted with his Brief[1], as well as in support of his underlying Motion to Dismiss Pursuant to Texas Civil Practice & Remedies Code § 101.106(f) that was filed in the trial court, was allegedly based on allegedly incompetent legal conclusions and was also allegedly contradicted by other evidence. Specifically, Appellants contend that Dr. Huang's participation

---

[1] *See* Tab A (C.R. 333-335) and Tab C (C.R. 803-808) to Dr. Huang's Brief.

2

agreement[2] with U.T. Physicians (hereinafter "UTP") (formerly known as University Care Plus (hereinafter "UCP")) contradicted the two sworn affidavits submitted by Dr. Huang with his Brief, and therefore rendered said evidence incompetent to support his Motion to Dismiss Pursuant to Texas Civil Practice & Remedies Code § 101.106(f). Dr. Huang has shown, and this Court accepted, that these two sworn affidavits, along with Dr. Huang's other additional evidence, detailed below, incontrovertibly established that he was in the paid service of the University of Texas Health Science Center at Houston ("UTHSCH"), a governmental unit, and that Dr. Huang was acting in the general scope of his employment with UTHSCH when he was providing medical services at the UTP Clinic on April 8, 2010.

Appellants further argue in their Motion that Dr. Huang's sworn affidavits were allegedly disputed or insufficient because: (1) they did not reference any evidence or have any evidence attached to them, (2) because the sworn affidavits were allegedly conclusory, and (3) because the sworn affidavits were allegedly contradicted by other evidence – Dr. Huang's participation agreement with UTP (formerly known

---

[2] *See* C.R. 1046-1062 ("Acknowledgement of Physician Participation in University Care Plus").

3

as UCP).   Appellants' assertions are untenable, as the evidence in the record clearly demonstrated otherwise.

Appellants incorrectly asserted in their Motion that Dr. Huang only offered the two aforementioned sworn affidavits – the original Affidavit of Dr. Huang[3] and the Supplemental Affidavit of Dr. Huang[4] – in support of his argument that he was solely in the paid service of UTHSCH, a governmental unit, and that he was acting in the general scope of his employment with UTHSCH when he was providing medical services at the UTP Clinic on April 8, 2010.   To the contrary, Dr. Huang also offered additional evidence in his Brief that Appellants failed to mention in their Motion: the Affidavit of T. Kevin Dillon[5], Dr. Huang's Memorandum of Appointment with UTHSCH[6], the Affidavit of Brent King, M.D.[7], the Affidavit of Andrew Casas[8], and the Affidavit of Pamela Promecene, M.D.[9]

Mr. Dillon is the Senior Executive Vice President, Chief Operating & Financial Officer for UTHSCH, and in that capacity, he supervised the Department of Human Resources and had access to UTHSCH's personnel

---

[3] *See* Tab A (C.R. 333-335) to Dr. Huang's Brief.
[4] *See* Tab C (C.R. 803-808) to Dr. Huang's Brief.
[5] *See* Tab B (C.R. 336-338) to Dr. Huang's Brief.
[6] See Tab E (C.R. 813-814) to Dr. Huang's Brief.
[7] *See* Tab D (C.R. 809-812) to Dr. Huang's Brief.
[8] *See* Tab F (C.R. 815-818) to Dr. Huang's Brief.
[9] See Tab G (C.R. 740-744) to Dr. Huang's Brief.

databases.[10] Because of his position and access, it was within Mr. Dillon's personal knowledge whether someone was in the paid service of UTHSCH at any given time.[11] Mr. Dillon's Affidavit established that Dr. Huang was in the paid service of UTHSCH, as a full-time physician and Assistant Professor in the Department of Obstetrics, Gynecology, and Reproductive Sciences, on April 8, 2010, the date Shana Lenoir (the "Decedent") received medical care at the UTP Clinic at issue.[12]

Dr. King was formerly the Executive Vice Dean for Clinical Affairs at UTHSCH, a position he held at the time of the preparation of his Affidavit, and due to his position and tenure at that time, Dr. King had personal knowledge regarding the creation, implementation, and function of the Medical Service Research and Development Plan ("MSRDP") trust fund account utilized by UTHSCH.[13] Dr. King's Affidavit established, among other things, that the MSRDP trust fund account did not have any employees, and more specifically, it did not employ, and has never employed, Dr. Huang.[14]

---

[10] *See* Tab B (C.R. 336-338) to Dr. Huang's Brief.
[11] *Id.*
[12] *Id.*
[13] *See* Tab D (C.R. 809-812) to Dr. Huang's Brief.
[14] *Id.*

Mr. Casas is a Vice President for UTHSCH, and is responsible for the administrative and business operations of the practice plan for UTHSCH.[15] In this administrative capacity for UTHSCH, Mr. Casas also served as the Chief Operating Officer for UTP, and in his administrative capacity for UTHSCH, as well as in his role as Chief Operating Officer for UTP, Mr. Casas had access to UTP's personnel databases.[16] Because of his position and access with UTP, it was within Mr. Casas' personal knowledge whether someone was in the paid service of UTP at any given time.[17] In that regard, Mr. Casas' Affidavit established that Dr. Huang was not an employee or independent contractor of UTP on April 8, 2010, or at any other time.[18]

Dr. Promecene is the Program Director of the Obstetrics and Gynecology Residency Program sponsored by UTHSCH, a position she has held since 2006, and due to her position and tenure, Dr. Promecene had personal knowledge regarding the role UTHSCH faculty physicians played in the UTHSCH Obstetrics and Gynecology Residency Program.[19] In that regard, Dr. Promecene's Affidavit established that one of the main

---

[15] *See* Tab F (C.R. 815-818) to Dr. Huang's Brief.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] See Tab G (C.R. 740-744) to Dr. Huang's Brief.

6

reasons why Dr. Huang was at the UTP Clinic at issue on April 8, 2010 was to supervise residents participating in the UTHSCH Obstetrics and Gynecology Residency Program.[20]

The aforementioned evidence conclusively established that Dr. Huang was in the paid service of UTHSCH, and that he was acting in the general scope of his employment with UTHSCH, at all times in question.

Turning to Appellants' argument concerning Dr. Huang's agreement with UTP (formerly UCP), Dr. Huang agrees he entered into a participation agreement with UTP (under its former UCP name); however, this document did not change or alter his status as a UTHSCH faculty physician at the times he provided medical services at any UTP clinic, including on April 8, 2010. Appellants have focused on the following language from the agreement at issue, **"Participation in University Care Plus (now U.T Physicians) has no effect on or relationship to faculty status at UT-H or medical staff privileges at any hospital …"**. Interestingly; however, Appellants omit the remaining portion of this provision from the participation agreement at issue:

---

[20] *Id.*

7

1. Participation in University Care Plus has no effect on or relationship to faculty status or medical staff privileges at any hospital, ***except that loss of faculty status at UT-H or medical staff privileges results in termination of University Care Plus participation in accordance with Section E of this Agreement;*** …[21]

It is obvious after a reading of the entire provision at issue that Appellants have completely misinterpreted the meaning of this provision. This provision did not make Dr. Huang an employee of UTP, when he was providing medical services its clinics, nor did it give UTP the legal right to control the details of Dr. Huang's work at the UTP Clinic at issue.[22] Rather, this provision expressly stated that even though Dr. Huang entered into this agreement with UTP to participate in the provision of medical services at UTP's clinics; such participation could not affect or alter his faculty status at UTHSCH. Essentially, this provision stated that if Dr. Huang was a UTHSCH faculty physician before he entered into the agreement, he remained a UTHSCH faculty physician after he entered into the agreement. In fact, this agreement expressly stated that should Dr. Huang lose his UTHSCH faculty status, he would also lose his ability to participate in this

---

[21] *See* C.R. 1049 at D.1. ("Effect of Participation in University Care Plus.") (Emphasis added).

[22] "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control. *See* Tex. Civ. Prac. & Rem. Code § 101.001(2).

8

medical services program with, or provide medical services at, UTP's clinics:

> 1. Upon Physician's departure or resignation from the faculty of UT-H or retirement from the active practice of medicine, UT-H shall so notify University Care Plus, and Physician's participation in University Care Plus shall be automatically terminated upon the date specified by University Care Plus' Board or its designee.[23]

Despite Appellants' assertion that Dr. Huang's participation agreement with UTP contradicted the testimony contained in his sworn affidavits; a simple reading of this document's plain language shows that this assertion is untenable. Additionally, nowhere in the participation agreement does Dr. Huang ever relinquish his faculty status with UTHSCH, nor does he give UTP the legal right to control the details of his work.[24] By entering into this participation agreement, Dr. Huang simply agreed to abide by the bylaws of UTP, when he was providing medical services at UTP's clinics, as a UTHSCH faculty physician. Moreover, nowhere in this document did UTHSCH relinquish its control over the details of Dr. Huang's work, nor did UTP assume control over the same.[25] Furthermore, although Dr. Huang's participation agreement with UTP may be silent as to his

---

[23] *See* C.R. 1049 at E.1. ("Termination of Participation.").
[24] *See* Footnote 22, above; *see also* TEX. CIV. PRAC. & REM. CODE § 101.001(2).
[25] *Id.*

9

supervision of residents at UTP's clinics, as a part of the UTHSCH residency program, the Affidavit of Dr. Promecene[26] firmly established that one of the main reasons why Dr. Huang was at the UTP Clinic at issue on April 8, 2010 was to supervise residents participating in the UTHSCH Obstetrics and Gynecology Residency Program.[27]

For the reasons set forth above, this Court's finding that Dr. Huang was in the paid service of UTHSCH, and that he was acting in the general scope of his employment with UTHSCH, when medical care was being provided to the Decedent at the UTP Clinic, at all times in question, was the correct ruling. It is abundantly clear that the competent and uncontroverted evidence submitted by Dr. Huang supported this Court's ruling.

## II.

## *ULTRA VIRES* ISSUES

Although they argue otherwise, Appellants' allegations of *ultra vires* conduct do not save their claims for monetary relief against Dr. Huang. Appellants' *ultra vires* allegations are blocked by statutory immunity and there is no exception.

---

[26] *See* Tab G (C.R. 740-744) to Dr. Huang's Brief.
[27] *Id.*

10

*Ultra vires* claims may be asserted against governmental employees: (1) in their official capacity <u>only</u>, (2) must be based on allegations that the governmental employee acted without legal authority or failed to perform a purely ministerial act, and (3) may seek only prospective, injunctive relief.[28] Because Appellants filed their medical negligence lawsuit against Dr. Huang: (1) allegedly in his individual capacity, (2) based on conduct that is inherently discretionary in nature, and (3) that seeks only monetary damages for past conduct, Appellants' allegations failed to state a valid *ultra vires* claim and also failed to create any legal "exception" to immunity. For these reasons, Appellants' allegations of *ultra vires* conduct were nothing more than an improper effort to recast tort claims in an attempt to avoid applicable immunity statutes.

A governmental employee who is sued for allegedly *ultra vires* acts can <u>only</u> be sued in his official capacity.[29] Appellants allegedly sued Dr. Huang in his individual capacity only.[30] Because Appellants allegedly sued Dr. Huang in his individual capacity only, they cannot state a legally valid *ultra vires* claim or exception to immunity. Notably, not only are

---

[28] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-74 (Tex. 2009).
[29] *Texas Department of Insurance v. Reconveyance Services, Inc.*, 306 S.W.3d 256, 258 (Tex. 2010) (emphasis added).
[30] *See* Plaintiffs' First Amended Original Petition at ¶ 62; C.R. 954.

Appellants' allegations of *ultra vires* conduct against Dr. Huang untenable, they attempt to have it both ways – Appellants contend that Dr. Huang was not a governmental employee at the time of the allegedly negligent medical care; however, they also contend that the *ultra vires* exception saves their individual claims against Dr. Huang. This cannot be, as explained above, the *ultra vires* exception is only available if Dr. Huang was a governmental employee, acting in his official capacity only. Appellants have to make a decision, was Dr. Huang a governmental employee or not? As explained above, Dr. Huang's evidence clearly established that he was. They cannot have it both ways.

In fact, the Texas Supreme Court's *Franka* opinion expressly stated that its construction of Section 101.106(f) forecloses suit against a government official in their individual capacity, so long as the government official was acting within the scope of their employment.[31] Although

---

[31] *Franka v. Velasquez,* 332 S.W.3d 367, 381 (Tex. 2011) ("This construction of §101.106 does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of his employment. This changes, among other things, the rule in *Kassen v. Hatley* which has allowed malpractice suits against physicians employed by the government [in their individual capacities] even though acting within the scope of employment.").

Although *Franka* acknowledges that a suit alleging *ultra vires* conduct against an employee in his *official capacity* is an exception to the general rule that a suit against an employee in his official capacity is a suit against his government employer, it provides no authority for the notion that a governmental employee may be sued in their *individual capacity* for an *ultra vires* act, nor have Appellants cited any other authority to support

*Heinrich* notes that state officials may be sued in both their official and individual capacities[32], nothing in *Heinrich* supports the notion that an *ultra vires* lawsuit may lie against a governmental employee in their *individual* capacity, or created any exception to immunity from which a governmental employee sued in their individual capacity would otherwise benefit.

Appellants' *ultra vires* allegations also fail because they are based on alleged acts or omissions that are purely discretionary in nature. To come within an *ultra vires* exception to an immunity statute, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.[33] Appellants' *ultra vires* claim against Dr. Huang alleges that he should have been physically present when Co-Appellee, LEAH ANNE GONSKI, M.D. ("Dr. Gonski"), provided medical treatment to the Decedent, and therefore he allegedly failed to

---

this notion. *Id.* at 832-83.

[32] *Heinrich,* 284 S.W.3d at 373 n. 7.
[33] *Id.* at 372; *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 110-11 (1984) (the provision of health services necessarily requires the exercise of "broad discretion"); *see also McLane Co., Inc. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App. – Austin 2004, pet. denied) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994) (holding "[a] discretionary act is one that requires the exercise of 'personal deliberation, decision and judgment.'")); *see also Layton v. City of Fort Worth*, Cause No. 02-14-00084-CV, 2014 WL 6997350, at *6 (Tex. App. – Fort Worth 2014, no pet. h.).

follow federal and state Medicaid regulations.[34]   Dr. Huang's decision whether to be physically present, as the attending physician, when Dr. Gonski provided medical care to the Decedent, on April 8, 2010, is an activity that is inherently discretionary in nature, and was conducted within the general scope of his employment with UTHSCH as an attending physician.[35]

Additionally, Appellants have misinterpreted what Medicaid requires, and they fail to recognize that there is no federal or state Medicaid practice regulation or guideline requiring Dr. Huang to be physically present when Dr. Gonski provided medical care to the Decedent on April 8, 2010. Rather, the Medicaid guideline that Appellants referenced, which is solely a billing guideline, is that in order for Medicaid to *pay* for the medical care provided by a resident physician, an attending physician must be physically present at the time the medical care is provided.[36]   Simply put, there is not a Medicaid practice regulation or guideline that required an attending physician to be physically present in order for a resident physician to provide medical care to a patient; rather, the regulation/guideline is that Medicaid will only *pay* for those medical services if an attending physician

---

[34] *See* Plaintiffs' First Amended Original Petition at ¶¶ 65-67; C.R. 954-955.
[35] *See* Tab G at ¶ 8 (C.R. 742) of Dr. Huang's Brief; *see also* Footnote 33, above.
[36] *See* R.R. 63.

14

was physically present at the time the medical services were rendered.[37] As fully explained in his Brief, Dr. Huang did not even violate the aforementioned Medicaid billing guideline, because he did not submit the bill at issue to Medicaid; rather, that was done by UTP.[38] As a result, Appellants fail to meet the second prong of the *ultra vires* claim elements as well.

Lastly, Appellants are seeking only monetary damages for past events as a remedy for allegedly *ultra vires* activity. A suit brought under the *ultra vires* waiver of governmental immunity cannot be used to obtain monetary relief for past damages from alleged *ultra vires* acts.[39] As Appellants' First Amended Original Petition seeks only money damages based on past events, they have not stated valid *ultra vires* claims against Dr. Huang for which relief can be granted.

In summation, Appellants' *ultra vires* allegations represent an improper effort to "recast" their medical negligence or health care liability claims as *ultra vires* claims to avoid the immunity provisions set forth in Chapter 101 of the Texas Civil Practice & Remedy Code. Appellants' only liability theory is medical negligence. A party may not circumvent

---

[37] *Id.*; *see also* Tab G at ¶ 8 (C.R. 742) of Dr. Huang's Brief.
[38] *See* Tab C (C.R. 803-808) and Tab F (C.R. 815-818) of Dr. Huang's Brief.
[39] *Heinrich,* 284 S.W.3d at 374-76.

governmental immunity statutes by characterizing its claims in a manner designed to avoid the requirement of legislative consent to suit.[40]

## III.

## CONCLUSION AND PRAYER

For the reasons set forth above, Dr. Huang respectfully requests that this Court deny Appellants' Motion for Rehearing. Dr. Huang further respectfully requests that this Court grant him all other and further relief that he may be justly entitled.

Respectfully submitted,

**HOLM BAMBACE LLP**

By: */s/ Charles B. Holm*
    Charles B. Holm
    State Bar No. 09900300
    cholm@holmbambace.com
    Kyle M. Smith
    State Bar No. 24054226
    ksmith@holmbambace.com
    1010 Lamar, Suite 1100
    Houston, Texas 77002
    (713) 652-9700 – Telephone
    (713) 652-9702 – Facsimile

    **ATTORNEYS FOR APPELLEE,**
    **JAOU-CHEN HUANG, M.D.**

---

[40] *Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Freedman v. The University of Houston*, 110 S.W.3d 504, 508 (Tex. App. – Houston [1st Dist.] 2003, no pet.).

16

## CERTIFICATE OF SERVICE

This will certify that pursuant to Texas Rule of Appellate Procedure 9.5, a true and correct copy of the above and foregoing Jaou-Chen Huang, M.D.'s Response in Opposition to Appellants' Motion for Rehearing was forwarded to the following counsel of record *via* e-file, e-mail, U.S. First Class Mail, certified mail, return receipt requested, facsimile, or hand delivery on **Tuesday, February 10, 2015**:

Joseph M. Gourrier
The Gourrier Law Firm, PLLC
530 Lovett Boulevard, Suite B
Houston, Texas 77006
***Via e-File***
***Via e-Mail: joseph@gourrierlaw.com***

John R. Strawn, Jr.
Victoria P. Skinner
Strawn Pickens LLP
Pennzoil Place, South Tower
711 Louisiana Street, Suite 1850
Houston, Texas 77002
***Via e-File***
***Via e-Mail: jstrawn@strawnpickens.com***
***vskinner@strawnpickens.com***

*/s/ Charles B. Holm*
Charles B. Holm

## **CERTIFICATE OF COMPLIANCE**

This will certify that pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the foregoing Jaou-Chen Huang, M.D.'s Response in Opposition to Appellants' Motion for Rehearing, as well as his previously filed Brief, comply with Texas Rule of Appellate Procedure 9.4(i)(2)(B)'s word-count limitation for computer-generated documents. Specifically, the undersigned certifies that Jaou-Chen Huang, M.D.'s Response in Opposition to Appellants' Motion for Rehearing contains 3,825 words, and his previously filed Brief contained 9,727 words, which is within the 27,000 word aggregate limit for all briefs filed by a party with the court of appeals in a civil case.

*/s/ Charles B. Holm*
Charles B. Holm